ANNA LEVIN, RESPONDENT, v. NATIONAL BEN FRANK-
LIN INSURANCE COMPANY ET AL., TRADING AS
PITTSBURG UNDERWRITERS, APPELLANTS.

Argued October 24, 1927—Decided February 6, 1928.

For the appellants, *Richard Boardman.*

For the respondent, *James D. Carton.*

The opinion of the court was delivered by

PARKER, J.   The suit is on a joint policy of fire insurance
in which the four defendant companies participated.   The de-
fenses, stated in a general way, were non-payment of pre-
mium; cancellation before the fire; and fraud in making
the claim.   The case went to the jury over motions to non-
suit and to direct a verdict, and verdict and judgment were
rendered for the plaintiff.   The defendant took out a rule to
show cause reserving exceptions, and on the hearing of this
rule the Supreme Court considered only the question whether
a finding that the premium had been paid was against the
weight of evidence, and held that it was not.   5 *N. J. Mis. R.*
519.   The defendants come here on their exceptions.

The payment of premium being thus settled, the remain-
ing principal issue was the claim of cancellation, and the
history of the case up to the time of the loss revolved around
this claim.   It was submitted to the jury under instructions
to which no objection seems now to be made in this regard,
the argument being that the matter should have been taken

from the jury by a nonsuit or direction. We think that either course would have been erroneous. The policy contained the usual cancellation clause, reading as follows: "This policy shall be canceled at any time at the request of the insured, or by this company by giving five days' notice of such cancellation." The loss, if any, was made payable to Jennie Altusel (Altschuler) mortgagee, as her interest may appear. She lived in Jersey City; the property was in Asbury Park, where plaintiff lived; the agent who issued the policy was in Lakewood.

We do not understand that at any stage of the case it was claimed that any notice of cancellation pursuant to this clause was sent to plaintiff either by the agent or by the companies. Throughout the case the attempt was to induce the plaintiff to surrender the policy, and as that document, in all reasonable probability, was in the hands of the mortgagee in Jersey City, and as no one seems to have called upon her there, naturally it was not surrendered. The general sequence of events was about as follows: The Lakewood agent issued the policy on June 27th. When his return came in at the home office a telegram was sent to him to cancel it as out of his territory, and a confirmatory letter followed on July 3d. It came out in the evidence that the companies do not like to send out a notice of cancellation over the heads of their agents, and we may imagine that the agents as a matter of business prefer to take some less drastic course than to serve a notice of cancellation themselves. What this agent did was to write a policy in another company, and to request plaintiff's husband orally and in writing (according to his testimony) to return the Pittsburg policy, saying "that the Pittsburg wanted their policy canceled, and I had written this policy to take its place, and wanted him to get me the Pittsburg policy as soon as he could. * * * He said he would get it for me." All through the agent's story runs the same general idea; he was to secure the policy and return it to the company. And that, apparently, is what the companies expected him to do; they preferred to take their chances rather than "get the agent in wrong with his clients." And even after the fire, when the mortgagee sent

in notice of the loss, the home office wrote her: "If [the agent] has not followed out our instructions to order this policy canceled, we will proceed with the adjustment of the loss." The issue of fact was, whether the agent at any time squarely notified the plaintiff, or her husband as her agent, if the jury found he was such agent, that the policy was canceled. Both plaintiff and her husband denied that he had done so, and this issue was submitted to the jury under instructions that were unexceptionable. It was clearly a question for their determination.

The next point made by appellant is that the evidence shows that Le Compte, the Lakewood agent, acted in writing the policy as the agent of both parties. This was likewise a jury question. He was the regularly accredited agent of the companies, representing their interests in his territory, and, as the jury were allowed to find, ostensibly in Asbury Park; he was no more the agent of the plaintiffs, in writing a policy, as the jury might say, than any other insurance man who is asked by an owner to keep him insured, and to that end issues policies in companies of which he is agent. As was said in *Smith & Wallace Co.* v. *Prussian Insurance Co.*, 68 *N. J. L.* (at p. 678), "where it appears that the agent is the duly appointed and authorized agent of the insurer, and acts as such in making the contract of insurance, he will be regarded as the agent of the insurer only, although as to contracts by other companies, of which he was not such authorized agent, he may be regarded as the agent of the insured."

Taking up the grounds of appeal: We see no error in refusing to nonsuit; or in the refusal to direct a verdict; or in the comments of the court on the "denials" of the plaintiffs. The amount of loss as stated by the court was a mere matter of arithmetical calculation, correctly figured as based on the theory of recovery. Request five, relating to agency for two persons, was too broad as covering such duplex agency at any stage of the proceedings. Request seven was charged, omitting the last sentence, which was properly omitted, as waiver could be predicated, and was predicated in the charge,

on the fact of the company specifying no other reason than cancellation as a basis of refusing to pay the loss.

The eighth request was as follows:

"If the plaintiff inserted the allegations as to the Pittsburg Underwriters' policy in the proof of loss, knowing the policy to have been canceled, for the purpose of collecting insurance money from the defendant, such action would be fraud and would render the policy void."

The refusal of this was either proper or harmless. It is based on the assumed fact of cancellation, the principal issue in the case. If the jury found such fact, that was an end of the matter, and the refusal was harmless; if they found no cancellation, the request was, of course, futile.

The tenth request was as follows:

"If the plaintiff failed in her proof of loss to disclose the fact that the encumbrance upon the property was a real estate mortgage which, together with a chattel mortgage, secured the $15,000 mentioned in the proof of loss, in order to conceal the fact of the existence of the chattel mortgage and the existence of a greater moral hazard, such concealment would avoid the policy."

The vice of this request is that it assumes that plaintiff knew that a chattel mortgage on property not covered by the policy, to secure the same debt as the real estate mortgage on the property insured, would create a "greater moral hazard" in the mind of the insurer. Of this there seems to be no proof whatever, and, hence, the request is based on an unwarranted assumption of fact. The court did, in fact, charge:

"It is insisted further that the plaintiff in her proof of loss swore falsely and fraudulently, that she did not truly state the amount of insurance. It is claimed that she did not state truly the nature and amount of encumbrances upon her property. This defense is available only when it appears that the assured knowingly and intentionally swore falsely or said or did that which is claimed to be fraudulent. Mere mistake, an honest mistake in stating facts in making out a proof of loss, would not be sufficient to sustain the defense. You have the evidence, gentlemen, as to how the proof of loss was prepared and who prepared it, from what source the data was

procured, and you would have to determine whether there was any intentional false swearing, false swearing that is intended to deceive the defendant."

This we consider was sufficient to cover the ground.

We think there was legal evidence of the amount of damages, and, hence, that the requests to find nominal damages only were properly refused. The questions to the witness Stansbury, who qualified as an insurance adjuster, were properly admitted. *State* v. *Duelks*, 97 *N. J. L.* 43.

We find no error requiring a reversal, and the judgment brought up will, accordingly, be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.